### FARMERS' BANK OF KENTUCKY *v.* WILLIAM STEVENS et al.

The Act of 1827 has not disturbed the well-settled rules of commercial law on the subject of notice of protest. Its object was to provide a new and convenient mode of proof.

Nor is the form of notice material where the date, amount and names of the drawer and payee are mentioned.

It is sufficient if the party to whom notice is sent is enabled to ascertain therefrom the nature and extent of the obligation which has become the subject of protest.

As holders and absolute owners of a negotiable bill, the plaintiffs had a right, without qualification, to enforce payment from any of the parties to the instrument.

HARVARD LAW SCHOOL LIBRARY.

APPEAL from the District Court, Sixth District, Parish of East Baton Rouge, *Robertson*, J. *Lacy*, for plaintiffs and appellants. *Morgan* and *Dunn*, for defendants.

LEA, J. This is a suit, by the holder of a protested bill of exchange, against the drawer and acceptor, who, in addition to the general denial, specially plead a failure of the consideration of the bill—it having been given as the price of five slaves, sold by the payee to the acceptor, for whose accommodation the bill was drawn—three of which slaves were, as defendants allege, affected with redhibitory maladies at the time of the sale.

The defendant *Hickey*, moreover, denies the corporate existence of the plaintiffs, and avers his discharge from all liability upon the bill, on account of a want of proper presentment for payment, and of a failure to give due notice of protest, as required by law.

The evidence shows that the Farmers' Bank of Kentucky is a duly incorporated banking institution of that State; that the bank discounted the bill sued upon in due course of business, before maturity, without notice of the alleged equities between the other parties to the bill; that at maturity it was duly presented at the place designated in the body of the bill, and protested for non-payment—due notice of which was given to the drawer *Hickey*, by directing the

FARMERS' BANK
*v.*
STEVENS.

notice to him on the day of the protest, under cover to the cashier of the Farmers' Bank, the last endorser on the bill, who in his turn, on the same day on which he received notice of protest, mailed the notice intended for *Hickey* " to Baton Rouge, La.," the place where he receives his letters and papers. This mode of proceeding was strictly in accordance with commercial usage. " The Act of 1827 has not disturbed the well-settled rules of commercial law on this subject. Its object was to provide a new and convenient mode of proof." See *Carmena* v. *Bank of Louisiana*, 1st Ann., 371.

Nor is the form of the notice material where the date, amount and names of the drawer and payee are mentioned. " It is sufficient if the party to whom notice is sent is enabled to ascertain therefrom the nature and extent of the obligation which has become the subject of the protest." See *Mainer* v. *Spurlock*, 9th Rob., 161.

Assuming that there was a good defence upon the bill as against *Graves*, it is evident that as the transferee of negotiable paper, received in the usual course of business, the rights of the bank cannot be affected thereby; but there is no evidence in the record upon which, as between the parties to the sale of the slaves referred to in the answer of the defendants, we would feel justified, even if the pleadings permitted it, in entering up a judgment rescinding the sale, or decreeing a diminution of the price of said slaves.

As holders and absolute owners of the bill, the officers of the bank had a right, without qualification, to enforce payment from any of the parties to the instrument; and the court cannot control them in making a selection. We think there should be judgment for the plaintiffs.

It is ordered that the judgment appealed from be reversed, and that the plaintiffs, the President, Directors and Company of the Farmers' Bank of Kentucky, do have and recover of *Philip Hickey*, and of the succession of *William Stevens*, *in solido*, (the latter herein represented by *Mrs. Elvira Hackett*, widow of said *Stevens*, and natural tutrix of her minor children, *Philip* and *Elvira Ann Stevens*,) the sum of $4968, with interest thereon at the rate of five per centum per annum, from the 7th day of January, 1854, till paid, with costs of protest and costs of suit, together with the costs of this appeal. Said judgment, so far as it affects the succession of said *William Stevens*, to be paid in due course of administration, according to law.